# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Tillman Harmon, ) | C/A No. 9:09-1964-DCN-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| Michael J. Astrue, ) | |
| Commissioner of Social Security, ) | **ORDER AND OPINION** |
| ) | |
| Defendant. ) | |

This matter is before the court on Magistrate Judge Bristow Marchant's report and recommendation that this court reverse and remand the decision of the Commissioner denying plaintiff's application for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 410-33, 1381-83c. The record includes a report and recommendation of the United States magistrate judge made in accordance with 28 U.S.C. § 636(b)(1)(B). Defendant has filed written objections to the report and recommendation. For the reasons set forth below, the court adopts the report and recommendation of the magistrate judge and reverses and remands the case for further consideration by the Commissioner.

## I. BACKGROUND

Plaintiff first filed for DIB and SSI in January 2006, alleging that he became disabled in June 2005 due to back pain and the effects of medication. Tr. 88, 93, 112. His application was denied both initially and upon reconsideration. Tr. 48-49. Plaintiff requested an administrative hearing, which was held on May 29, 2008. Tr. 7-10, 21-44.

1

On July 8, 2008, the administrative law judge (ALJ) issued an unfavorable decision, finding plaintiff was not disabled because he could perform a range of light work and could perform jobs existing in significant numbers in the national economy. Tr.7-20. On June 4, 2009, the Appeals Council rendered the Commissioner's determination final when it denied plaintiff's request to review the ALJ's decision. Tr. 1-3.

Plaintiff was born on April 22, 1973. Tr. 88. He has a ninth grade education with past relevant work experience as a heavy equipment operator and painter. Tr. 15, 26, 113-14, 118. At age 14, plaintiff scored a Verbal IQ score of 73, a Performance IQ score of 86, and a Full Scale IQ score of 78, placing him in the borderline range of intellectual functioning. Tr. 167.

On June 15, 2005, plaintiff visited the emergency room for back pain due to a fall at work. Tr. 243-44. Dr. Morris diagnosed plaintiff with a trapezial acute myofascial strain and prescribed medication. Tr. 184. On August 31, 2005, plaintiff began treatment for back pain with Dr. Leonard E. Forrest. Tr. 243-44. On September 23, 2005, a spinal imaging test revealed multilevel degenerative disc/osteophyte disease of the cervical spine and moderate intraforaminal disc/osteophyte protrusion at multiple sites resulting in varying degrees of foraminal stenosis. Tr. 229. Dr. Forrest conducted a nerve conduction study on September 27, 2005, which indicated bilateral radiopathy at the L5 level of plaintiff's lumbar vertebra. Tr. 220. Additionally, plaintiff was diagnosed with broad-based herniated nucleus pulposus at L4-5. Tr. 187. Plaintiff underwent a laminectomy, discectomy, and decompression surgery on November 7, 2005. Tr. 188. On November 11, 2005, plaintiff reported chest pain and was advised to go to the ER, which he did not

do. Tr. 238. On January 30, 2006, Dr. Johnson found persistent broad-based disc bulging and contact on the transiting L5 nerve roots. Tr. 225-26. On January 31, 2006, however, Dr. Johnson reported that plaintiff's postoperative MRI looked "quite good" except for continued symptoms in his left side. Tr. 234. Plaintiff continued to undergo testing and treatment related to back pain through September 2006 and began seeing Dr. John Sanders for pain management after being diagnosed with chronic pain symptoms in January 2007. Tr. 283.

In April 2006, Dr. George T. Keller, III, a Disability Determination Services (DDS) medical consultant, performed a physical residual functional capacity (RFC) assessment, and Dr. Mark Williams conducted a psychiatric review. Tr. 194-215. Dr. Keller found that plaintiff could lift up to twenty pounds, and lift ten pounds regularly; walk for six to eight hours with normal breaks; sit for the same period; occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. Tr. 195. Dr. Williams diagnosed plaintiff with borderline intellectual functioning. Tr. 203. In September of 2006, plaintiff scored a Full Scale IQ of 51, Verbal IQ of 55, and Performance IQ of 55 on an IQ test performed by psychiatrist Dr. L. Randolph Waid. Tr. 252. Although these scores indicate mental retardation, Dr. Waid believed plaintiff's abilities to be somewhat better than the scores indicated. Tr. 253. On September 7, 2006, Dr. Barry Weissglass performed an independent occupational evaluation and found that plaintiff could not perform household chores, previous hobbies, and useful professional work, including sedentary work, due to pain onset after twenty minutes. Tr. 254, 257.

On November 22, 2007, Dr. John Sanders, plaintiff's treating physician, evaluated plaintiff for chest pain. Tr. 265-69. Plaintiff reported a five-month history of chest pressure and tightness which had worsened with time. Tr. 265. Plaintiff's medical history included chronic bronchitis, hypertension, and tobacco dependency. Tr. 265-66. He exhibited expiratory wheezing in the left lower lung, and an EKG showed an incomplete right bundle branch block. Tr. 266. Plaintiff's MRI did not indicate musculoskeletal or neurological abnormalities, sinus rhythm, or other ischemic changes. Tr. 266. The hospital admitted him for gastroesophageal reflux disease, chronic bronchitis, and anxiety. Tr. 267.

A physician at Trident Health System, apparently Dr. Sanders,[1] evaluated plaintiff on December 10, 2007, for recurrent chest pain associated with shortness of breath and found plaintiff had expiratory wheezes. Tr. 268-69. Dr. Sanders noted that plaintiff was "medically unstable" from either coronary artery disease, gastroesophageal reflux disease, or anxiety and recommended a cardio catheterization. Tr. 268. The cardio catheterization performed two days later indicated mild left ventricular systolic dysfunction with a low estimated ejection fraction of 40-45% but was otherwise normal. Tr. 270. On December 26, 2007, an ambulance took plaintiff to the hospital for chest pain, bronchospasm, and probable anxiety. Tr. 278. The clinical report from that date indicates a history of chronic obstructive pulmonary disease (COPD), although the physical examination and lab results were normal. Tr. 276-77. On January 6, 2008, Dr.

---

[1] Examination records were written on Dr. Sanders's stationary but were unsigned.

Sanders noted that plaintiff was experiencing "distant breath sounds" in his lungs, had a history of chronic bronchitis from tobacco use, and continued to experience constant pain in his lower chest. Tr. 279.

On February 12, 2008, during an examination for an infected tooth, plaintiff reported daily albuterol and nightly oxygen use. Tr. 281. Dr. Sanders wrote a letter on April 18, 2008, stating that plaintiff was "totally disabled from his back injury and additionally disabled due to COPD requiring oxygen." Tr. 282. Plaintiff testified at the administrative hearing that he had been using oxygen twenty-four hours a day because of COPD since December 2007, and had previously used albuterol or inhalers. Tr. 30-31. He also appears to have been using oxygen during the administrative hearing. Tr. 30-31.

The ALJ determined that although plaintiff had severe impairments from low back pain and borderline intellectual functioning and was unable to perform in any area of employment where he had past relevant work experience, he nevertheless retained the RFC to perform a range of light work. Tr. 12-14. The ALJ followed the five-step sequential evaluation process to determine whether plaintiff was disabled because of back pain and limited mental functioning. Tr. 11-19.

At the first step, the ALJ found plaintiff had not engaged in substantial gainful activity since he alleged he became disabled. Tr. 12. At the second step, the ALJ found plaintiff had severe impairments: low back pain and borderline intellectual functioning. Tr. 12. At the third step, the ALJ found plaintiff's impairments were not presumptively disabling. Tr. 12.

At the fourth step, the ALJ found that plaintiff had the RFC to perform light work with restrictions that require no lifting or carrying over twenty pounds occasionally and ten pounds frequently; no standing and/or walking over six hours in an eight-hour workday; only occasional climbing of ramps and stairs; balancing, stooping, kneeling, crouching, and crawling; and never climbing ladders, scaffolds, or ropes. Tr. 14. The ALJ found that plaintiff was functionally illiterate. Tr. 14. The ALJ also noted that plaintiff should avoid exposure to fumes, odors, gases, and hazards. Tr. 14.

To determine plaintiff's RFC, the ALJ considered the opinions of Dr. Weissglass and Dr. Sanders, plaintiff's treating physician, but found they were not entitled to great weight. Tr. 15-16. The ALJ discounted Dr. Weissglass's opinion because it was "more a vocational opinion than a medical opinion, and his clinical findings do not support his conclusion." Tr. 16. The ALJ discounted Dr. Sanders's opinion because Dr. Sanders had only seen plaintiff four times and "did not report significant findings at any of those visits." Tr. 16. The ALJ's factual analysis justifying the rejection of Dr. Sanders's opinion was apparently limited to plaintiff's allegations concerning back pain. Tr. 16. While the ALJ noted the examination for chest pain on December 19, and 26, 2007, and January 6, 2008, these examinations were cited to discount the back pain claims because they failed to indicate severe back pain. Tr. 15. Though the ALJ noted that plaintiff testified to using oxygen since December 2007, as well as daily albuterol breathing treatments, the ALJ did not discuss this evidence further or explain its relation to the RFC. Tr. 15. The ALJ did not evaluate plaintiff's history of chronic bronchitis, diagnosis of COPD, or the medical evidence discussing breathing problems.

The ALJ agreed with the DDS medical consultant's assessment conducted on April 2006, prior to plaintiff's allegations of breathing problems. Tr. 17. The ALJ also found that "due to complaints of breathing problems and back pain," the claimant should not be exposed to fumes, gases, odors, and hazards. Tr. 17. Concluding the fourth step, the ALJ found that plaintiff's RFC prohibited him from performing past relevant work. Tr. 18. At the fifth step, the only limitation from breathing problems that the hypothetical posed to the vocational expert, Robert E. Brabham, Jr., was exposure to fumes, odors, and gases. Tr. 40. Relying on the testimony of the vocational expert, the ALJ found plaintiff could perform other jobs that existed in significant numbers in the national economy. Tr. 18-19. Therefore, the ALJ found plaintiff was not disabled. Tr. 20.

## II. STANDARD OF REVIEW

This court is charged with conducting a de novo review of any portion of the magistrate judge's report to which a specific, written objection is made. 28 U.S.C. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of the magistrate judge. See Thomas v. Arn, 474 U.S. 140 (1985). This court is not required to review, under a de novo standard, or any other standard, the factual findings and legal conclusions of the magistrate judge to which the parties have not objected. See id. at 149-50. A party's general objections are not sufficient to challenge a magistrate judge's findings. Howard v. Sec'y of Health & Human Servs., 932 F.2d 505, 508-09 (6th Cir. 1991). The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270-71 (1976). This court may accept, reject, or modify the report

7

of the magistrate judge, in whole or in part, or may recommit the matter to him with instructions for further consideration. 28 U.S.C. § 636(b)(1).

Although this court may review the magistrate judge's recommendation de novo, judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings of the [Commissioner] are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence" has been defined as,

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Id. (internal citations omitted). "[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence." Id. Instead, when substantial evidence supports the Commissioner's decision, this court must affirm that decision even if it disagrees with the Commissioner. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). "Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." Hays, 907 F.2d at 1456.

### III. DISCUSSION

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations establish a sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520, 416.920. Under this process, the ALJ must determine, in sequence: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether that severe impairment meets or equals an illness contained in 20 C.F.R. Part 4, Subpart P, Appendix 1, which warrants a finding of disability without considering vocational factors; (4) if not, whether the impairment prevents him or her from performing past relevant work; and (5) if so, whether the claimant is able to perform other work considering both his remaining physical and mental capacities (defined as a plaintiff's RFC) and his vocational capabilities (age, education, and past work experience) to adjust to a new job. Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); see also Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 20 C.F.R. § 416.920). The applicant bears the burden of production and proof during the first four steps of the inquiry. Pass, 65 F.3d at 1203 (citing Under v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)). If the sequential evaluation process proceeds to the fifth step, the burden shifts to the Commissioner to show that other work is available in the national economy that the claimant could perform. Id.; see also Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987) (discussing burden of proof).

In this case, the ALJ determined that plaintiff suffers from severe impairments due to back pain and borderline mental functioning rendering him incapable of performing

past work. Tr. 12, 18. The ALJ also found that plaintiff's RFC permits him to perform other jobs that exist in significant numbers in the national economy. Tr. 18. Plaintiff's primary objection to this conclusion is based on the ALJ's failure to consider plaintiff's alleged breathing problems. The court agrees.

District courts may evaluate the Commissioner's finding to determine whether it is supported by substantial evidence and whether the correct law was applied in the determination. Hays, 907 F.2d at 1456. A Commissioner's determination fails to meet the "substantiality test" if it fails to consider all of a plaintiff's severe impairments with "clearly demonstrate[d]" symptoms in the various Listings. Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986). In Cook, the Fourth Circuit remanded the Secretary's decision because the conclusion that a severe impairment failed to meet a Listings requirement was not accompanied by his rationale for that conclusion in step three. Id. at 1172-73. The omission made it "impossible" for the court to determine whether substantial evidence existed to support the Secretary's determination. Id. at 1173. Here, as in Cook, the ALJ failed to compare plaintiff's diagnosis of COPD with the corresponding Listing (3.02). Tr. 12-14. Furthermore, the ALJ failed to identify plaintiff's COPD in step two, even though plaintiff testified to this diagnosis and oxygen and albuterol treatment for the condition and his medical records included the diagnosis. Tr. 30-31, 270, 276-77, 282. This court cannot determine whether the Commissioner's finding is supported by sufficient evidence because of these omissions.

The ALJ's report also lacks the requisite explanation for disregarding the treating physician's opinion concerning plaintiff's diagnosis of COPD. In order to reject a

treating physician's opinion, the ALJ must *explain* the rationale for the rejection, Morales v. Apfel, 225 F.3d 310, 317-18 (3d Cir. 2000), and provide "persuasive contradictory evidence." Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir. 1983). In the instant case, Dr. Sanders wrote that plaintiff had COPD and that this condition caused him to be disabled. Tr. 276-77, 282. While Dr. Sanders's conclusion that plaintiff was disabled due to COPD is not entitled to deference because it is a legal conclusion, his opinion that plaintiff suffered from COPD is entitled to great weight and may only be rejected if there is persuasive contradictory evidence included in the decision. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam); Mitchell, 699 F.2d at 187. Although the ALJ explained his rationale for disregarding Dr. Sanders's opinion with regard to plaintiff's back pain, the ALJ failed to mention Dr. Sanders's opinion about plaintiff's breathing impairments, much less explain his rationale for rejecting the treating physician's opinion by presenting "persuasive contradictory evidence." Tr. 16.

The ALJ also neglected to consider plaintiff's alleged COPD when analyzing whether the combined effect of plaintiff's impairments resulted in disability. When a claimant has more than one impairment, the ALJ must consider the combined effect of the impairments, "without regard to whether any such impairment, if considered separately, would be of sufficient severity," and "adequately explain his or her evaluation" of the combined effect. 20 C.F.R. § 404.1523; Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (remanding due to the ALJ's failure to analyze and explain the combined effect of all of the claimant's impairments); see also Cook, 783 F.2d at 1174 (mandating an explanation on the record to facilitate judicial review). Here, the ALJ did

not mention COPD as a severe impairment or analyze it in conjunction with the other impairments.

The Commissioner objects to the magistrate judge's report and recommendation, arguing that although the ALJ failed to properly include COPD as a severe impairment in step two, the finding was implicit as indicated by the ALJ's later limitation of plaintiff's RFC from exposure "to fumes, gases, and other odors or hazards" because of his "complaints of breathing problems and back pain." Tr. 17. Even if this argument is substantiated by the record, it does not relieve the ALJ from the "duty of explanation." See v. Wash. Metro. Area Transit Auth., 36 F.3d 375, 384 (4th Cir. 1994). If the ALJ had determined that COPD was a severe impairment, the ALJ should have followed the proper Listings analysis for COPD, analyzed the combined effect of plaintiff's conditions, and explained how the RFC and the hypothetical posed to the vocational expert incorporated the medical evidence. See id. (requiring "specific reference to the evidence supporting an ALJ's decision"); Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981) (noting the importance of including an explanation for an accepted or rejected severe impairment in order to "tell if significant probative evidence was not credited or simply ignored"); Fenton v. Apfel, 149 F.3d 907, 910 (8th Cir. 1998) ("The Secretary is required to produce vocational expert testimony concerning availability of jobs which a person *with a claimant's particular characteristics* can perform, if . . . .he or she is precluded from performing a full range of a particular work classification . . . .") (emphasis added).

The Commissioner further objects to the magistrate judge's recommendation, claiming that the omission of COPD as a severe impairment was "harmless error." Def.'s

Objections, 3. Harmless error analysis is not appropriate in this case. Harmless error analysis may be appropriate "'to supply a missing dispositive finding . . . .where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.'" Fischer-Ross v. Barnhart, 431 F.3d 729, 733-34 (10th Cir. 2005) (quoting Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004)).

In the present case, the ALJ did not provide specific findings that would conclusively negate the possibility that plaintiff's COPD failed to meet the Listing requirements, the combined effect was insufficient, or the RFC would have precluded other employment. See Davis v. Astrue, No. 2:07-231-MBS-RSC, 2008 WL 540899, at *3-4 (D.S.C. Feb. 22, 2008) (finding that harmless error analysis was inappropriate where the ALJ failed to include a severe impairment in the Listings analysis in step three and failed to conclusively negate the possibility that a plaintiff's impairment met a Listing in step four and step five). The ALJ never mentioned plaintiff's COPD diagnosis, bronchospasms, or examination results regarding breathing problems in the later steps. While the ALJ did limit plaintiff's RFC, precluding exposure to fumes, odors, gases, or hazards, he failed to explain this narrow limitation. T. 14. These comments do not preclude a reasonable factfinder, following the correct analysis, from resolving the matter in another way, and thus, harmless error analysis is inappropriate. While evidence may have been present to support the ALJ's determination, such evidence was not included in the record for the court to review for sufficiency. Thus, remand is necessary.

13

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED** that the Commissioner's decision to deny plaintiff DIB and SSI is **REVERSED,** and this case is **REMANDED** to the Commissioner for further proceedings consistent with this order and opinion.[2]

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**CHIEF UNITED STATES DISTRICT JUDGE**

**September 21, 2010**
**Charleston, South Carolina**

---

[2] Because the court remands the finding of no disability based on plaintiff's first objection, the court does not address plaintiff's other objections.